NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                    :
RICHARD MARSHALL JR.,               :
                                    :
        Plaintiff,                  :          Civil Action No. 13-0533 (JAP) (TJB)
                                    :
            v.                      :          **OPINION**
                                    :
KEANSBURG BOROUGH, et al.,          :
                                    :
        Defendants.                 :
_____:

PISANO, District Judge.

    This is an action brought by Plaintiff Richard Marshall Jr. ("Plaintiff") against

Defendants Keansburg Borough, Detective Bryan King, Sergeant Wayne Davis, Detective Jillian

Kohler, Chief of Police Raymond O'Hare, Deputy Chief of Police Michael Pigott, John Does 1-

5, and John Does 6-10 (together, the "Defendants").  Plaintiff alleges various 42 U.S.C. § 1983

violations and a violation of the New Jersey Civil Rights Act stemming from an altercation

between Defendants King, Davis, and Koehler and Plaintiff wherein the Defendant Officers used

allegedly excessive force against Plaintiff.  He also alleges common law claims for assault and

battery, intentional infliction of emotional distress, and negligence.  Presently before the Court is

Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6) [ECF No. 5].  The Court decides these matters without oral argument pursuant to

Federal Rule of Civil Procedure 78.  For the reasons set forth below, the Motion to Dismiss will

be denied in part and granted in part.

## Background[1]

On December 18, 2010, Plaintiff was standing on the sidewalk on Beachway Avenue in Keansburg, New Jersey, when he was approached by three uniformed Keansburg Borough Police Officers, Defendants King, Davis, and Kohler (together, the "Defendant Officers"). As the Defendant Officers approached, Plaintiff's cellular phone started to ring. Defendant King told Plaintiff not to "fucking answer that phone." Plaintiff proceeded to answer the phone, at which point Plaintiff alleges that Defendants King and Davis grabbed Plaintiff from both sides of his arm and threw him face first against their unmarked police vehicle. As Defendant King grabbed Plaintiff, he screamed, "I fucking told you not to answer your phone." Defendants King and David allegedly proceeded to kick out Plaintiff's legs, tackle him to the ground, and knee Plaintiff in his ribs and back. Defendant King then allegedly used his forearm to choke Plaintiff, at which point Plaintiff stated, "I can't breathe; why are you doing this?" Defendant Kohler, who had observed the entire incident, then sprayed Plaintiff in the face with OC spray, while Plaintiff was handcuffed and on the ground.

---

[1] In addressing a motion to dismiss, the Court must accept as true the allegations contained in the Complaint and construe the Complaint in the light most favorable to the non-moving party. *Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010). A district court may also rely on exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents that form the basis of a plaintiff's claims. *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003). "Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include criminal case dispositions such as convictions or mistrials, letter decisions of government agencies, and published reports of administrative bodies." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (internal citations omitted). However, "examin[ing] a transcript of a prior proceeding to find facts converts a motion to dismiss into a motion for summary judgment." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp.*, Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999) (citing *Kauffman v. Moss*, 420 F.2d 1270, 1274-75 (3d Cir. 1970)). Thus, the facts below are taken from Plaintiff's Complaint filed on December 13, 2012 in the Superior Court of New Jersey, Law Division, Monmouth County, matters of public record, and any documents specifically referred to in the pleadings, unless otherwise indicated. The disposition of Plaintiff's state criminal case will be considered by the Court at this time, because it is a public record. *See Pension Benefit Guar. Corp.*, 998 F.2d at 1197. Likewise, the Tort Claim Notice filed by Plaintiff will also be considered, as it is a document that forms the basis of the state law claims. The Court, however, will not consider the transcript of Plaintiff's plea colloquy or the Certification of Raymond O'Hare, because they do not fall within the Third Circuit's definition of public documents. The facts in this "Background" section do not represent the Court's factual findings.

As a result of this incident, Plaintiff was charged with resisting arrest in violation of *N.J.S.A.* 2C:29-2(a)(1) as to all three police officers.  On February 2, 2012, Plaintiff appeared before the Honorable Michael Pugliese, J.M.C., relative to the charges brought against him.  As a result of this proceeding, Plaintiff pled guilty to a violation of Keansburg Municipal Ordinance 3-17.4 for "disorderly conduct" and paid fines.  Accordingly, the charges for resisting arrest were dismissed.

On December 13, 2012, Plaintiff commenced this action.  He alleges:  (1) Defendants King, Davis, and Kohler used excessive force against him in violation of § 1983; (2) Defendants King, David, and Kohler failed to intervene in the unjustified assault and arrest of Plaintiff in violation of § 1983; (3) Defendant Davis is liable as a supervisor under § 1983; (4) Defendants Borough of Keansburg Police Department, O'Hare, and Pigott are liable to him under § 1983 because an official policy, practice, or custom caused Plaintiff's injuries; (5) prospective injunctive relief against the Defendants is warranted; (6) Defendants King, Davis, and Kohler used excessive force against Plaintiff in violation of *N.J.S.A.* 10:6-1 ("The New Jersey Civil Rights Act" or "NJCRA"); (7) Defendants King, Davis, and Kohler committed an assault and battery on Plaintiff; (8) Defendants King, Davis, and Kohler acted in such a way that Plaintiff sustained severe emotional distress; and (9) Defendants King, Davis, and Kohler acted negligently towards the Plaintiff.

The Defendants move to dismiss Plaintiff's Complaint in its entirety.  Defendants argue that Count One should be dismissed because Plaintiff's § 1983 claim for excessive force is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Alternatively, they argue that Count One should be dismissed Defendants King, Davis, and Kohler are entitled to qualified immunity and are therefore barred from liability.  Finally, they argue that Plaintiff is estopped from asserting a

§ 1983 excessive force claim in Count One because of the guilty plea he entered in the underlying criminal lawsuit. Defendants contend that because Count One is deficient and must be dismissed, Plaintiff's remaining § 1983 claims (Counts Two through Five) must fail as well. Defendants allege that Count Six of the Complaint, the alleged violation of the New Jersey Civil Rights Act, should be dismissed for the same reasons as Plaintiff's § 1983 claims. Defendants contend that the additional state law claims (Counts Seven through Nine) should be dismissed because, like Counts Two through Five, they are predicated on the use of excessive force against the Plaintiff.

Defendants further allege that any claims against Defendants O'Hare and Pigott must fail because Plaintiff's claims against them are based upon a theory of *respondeat superior*. Defendants also argue any claims against Defendant O'Hare should be dismissed because he was not the Chief of Police on the date of the incident. Defendants further contend that any claims against Defendants O'Hare and Pigott are barred because they were not identified on a Notice of Tort Claim by the Plaintiff. Finally, Defendants allege that there can be no claim for punitive damages against Keansburg Borough under either § 1983 or under the New Jersey Civil Rights Act.

## I.     Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the Plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). As discussed above, when reviewing the

sufficiency of a complaint, a district court may also rely on exhibits attached to a complaint, matters of public record, and undisputedly authentic documents that form the basis of a plaintiff's claims. *See Sentinel Trust Co.*, 316 F.3d at 216.

In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). When assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Any legal conclusions are "not entitled to the assumption of truth" by a reviewing court. *Id.* at 679. Rather, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id. See also Fowler*, 578 F.3d at 210 (explaining that "a complaint must do more than allege a plaintiff's entitlement to relief").

Therefore, when reviewing the sufficiency of a complaint, a district court use a three-part analysis. First, the court must note the elements a plaintiff must plead to state a claim. Second, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Lastly, the court should assume the veracity of any well-pleaded factual allegations and "then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal quotations and citations omitted).

## II.     Legal Discussion

### a.     Plaintiff's § 1983 Excessive Force Claim (Count One)

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  In order to establish a § 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citations omitted).  "Action under color of state law requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (internal quotation omitted).

A claim that a law enforcement officer has used excessive force during the course of an arrest or other "seizure" of a citizen is considered to be an alleged violation of the Fourth Amendment.   "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999).  Determining whether a seizure was unreasonable in an excessive force case is an objective inquiry:  "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  "[T]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

*Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (quoting *Graham*, 490 U.S. at 396-97).

Defendants do not dispute that Plaintiff has stated a sufficient claim for excessive force in violation of § 1983. Rather, they move to dismiss Count One on three bases: (1) the doctrine established in *Heck v. Humphrey*, 512 U.S. 477 (1994) bars Plaintiff from bringing a claim of excessive force under § 1983; (2) Defendants King, Davis, and Kohler are entitled to qualified immunity and therefore Plaintiff's claims are barred; and (3) Plaintiff is both collaterally and judicially estopped from asserting an excessive force claim by virtue of his guilty plea to disorderly conduct.

1. *Heck Analysis*

First, Defendants assert that the *Heck* doctrine bars Plaintiff's excessive force claim, and therefore the claim should be dismissed. This Court disagrees. "Under *Heck*, a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." *Gilles v. Davis*, 427 F.3d 197, 208-209 (3d Cir. 2005). When a plaintiff seeks damages in a § 1983 action,

> the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck*, 512 U.S at 487. Therefore, the central inquiry for a court is whether the claims asserted by the plaintiff "would necessarily imply the invalidity of his conviction." *Id.* In this Circuit, it has generally been held that "an underlying criminal conviction does not necessarily bar a plaintiff's excessive force claim." *Wade v. Colaner*, No. 06- 3715, 2009 U.S. Dist. LEXIS 23057, at *24-

25 (D.N.J. Mar. 19, 2009). *See also Nelson v. Jashurek*, 109 F.3d 142, 145-46 (3d Cir. 1997)

("[T]he fact that [defendant] was justified in using 'substantial force' to arrest [plaintiff] does not

mean that he was justified in using an excessive amount of force and thus does not mean that his

actions in effectuating the arrest necessarily were objectively reasonable. In short, there

undoubtedly could be 'substantial force' which is objectively reasonable and 'substantial force'

which is excessive and unreasonable."); *Hammock v. Borough of Upper Darby*, No. 06-1006,

2007 U.S. Dist. LEXIS 80493, at *8 n.5 (E.D. Pa. Oct. 31, 2007) (explaining that *Heck* did not

bar the plaintiff's claims where she was found guilty of obstructing the administration of law

because this finding would not be compromised "if she were to prevail on her excessive force

claim, since holding otherwise would imply that a police officer could constitutionally pistol-

whip any person who physically interfered with his duties, no matter how inconsequentially");

*Allah v. Whitman*, No. 02-4247, 2005 U.S. Dist. LEXIS 18171, at *11 (D.N.J. Aug. 17, 2005)

("There is simply no logical or legal argument that would allow a court to conclude that a lawful

conviction for drug possession would be called into question by a finding that excessive force

was unlawfully used at the time of arrest.").

In this case, Plaintiff pled guilty to a municipal ordinance violation for disorderly

conduct.[2] There is no logical argument that can be made that would allow this Court to conclude

that a conviction for disorderly conduct could be called into question by a finding that

Defendants King, Davis, and Kohler unlawfully used excessive force at the time of arrest.

Accordingly, Plaintiff's excessive force claim does not present a collateral attack on the

underlying conviction by necessarily implying the invalidity of such conviction, and as such, is

not barred by *Heck*.

---

[2] Contrary to what Defendants state in their moving papers, Plaintiff did not plead guilty to resisting arrest. Even if he had pled guilty to resisting arrest, that would not necessarily bar his excessive force claim. *See Nelson*, 109 F.3d at 145-46; *Lora-Pena v. FBI*, 529 F.3d 503, 505-506 (3d Cir. 2008).

2. *Use of Pepper Spray*

Likewise, Defendants assert that, even if Plaintiff's underlying guilty plea does not preclude an excessive force claim, Defendant Kohler should be dismissed because the Complaint only alleges that she sprayed Plaintiff in the face with OC spray. Defendants argue that a conviction for resisting arrest means that officers are justified in using "substantial force" and the use of pepper spray is one of the lowest forms of authorized force. *See* Defs.' Br. at 10-11 (citing *Revak v. Lieberum*, 398 F. App'x 753 (3d Cir. 2010); *Lora-Pena v. F.B.I.*, 529 F.3d 503, 506 (3d Cir. 2008)). Therefore, they argue that Count One should be dismissed against Defendant Kohler because she was not involved in the alleged assault and the use of OC spray "cannot be deemed excessive force." Defs.' Br. at 11.

This Court disagrees. First, as stated above, Plaintiff did not plead guilty to resisting arrest, nor does Plaintiff allege in his Complaint that he resisted arrest. Therefore, there is no determination in front of this Court that the Officer Defendants were justified in using any sort of force against Plaintiff, nevertheless "substantial force." Second, an analysis of the reasonableness of the amount of force used is more appropriately addressed after the pleading stages and is, in fact, normally an issue reserved for a jury. *See Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) ("The reasonableness of the use of force is normally an issue for the jury."). Indeed, all the cases cited by Defendants regarding the use of pepper spray are all summary judgment cases. Finally, Defendants' assertion that "the use of OC pepper spray cannot be deemed excessive spray" is simply not true. *See* Defs.' Br. at 11. *See, e.g.*, *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) (finding it clearly established that pepper-spraying plaintiff after he was handcuffed constituted excessive force); *Miller v. Woodhead*, No. 08-3092, 2011 U.S. Dist. LEXIS 20936, at *11-12 (D.N.J. Mar. 2, 2011)

(finding a reasonable fact-finder could find an officer defendant used excessive force when plaintiff was maced after being handcuffed); *Peschko v. City of Camden*, No. 02-5771, 2006 U.S. Dist. LEXIS 43871, at *16 (D.N.J. June 28, 2006) (same). Therefore, Count One of the Complaint will not be dismissed against Defendant Kohler at this time.

3. *Qualified Immunity*

Defendants also move to dismiss the case on the grounds that Defendants King, Davis, and Kohler are entitled to qualified immunity from Plaintiff's claims. A government official is entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When determining if a government official is entitled to qualified immunity, courts undertake a two-part inquiry, analyzing "(1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012). While the issue of qualified immunity can be appropriately raised on a motion to dismiss, the Third Circuit has warned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009). Here, at this stage of the proceedings, qualified immunity for the Defendant Officers cannot be established.

First, Plaintiff has alleged a violation of a constitutional right. As discussed, excessive force claims arising in the context of an arrest or an investigatory stop or any other "seizure" of a citizen are analyzed under the "objective reasonableness" standard of the Fourth Amendment.

*See Graham*, 490 U.S. at 395-97. An officer's actions must be analyzed "in light of the facts and circumstances confronting without regard to their underlying intent or motivations." *Id*. at 397. Such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight" should be considered. *Id*. at 396. The Third Circuit has also found the following facts to be relevant: "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).

In this case, this Court finds that Plaintiff has sufficiently alleged a violation of the Fourth Amendment in his claim for excessive force by Defendants King, Davis, and Kohler. Plaintiff alleges that Defendants King, Davis, and Kohler approached him and thereafter starting beating him apparently because Plaintiff answered his cellular phone after Defendant King told him not to answer the phone. Specifically, Plaintiff alleges that he was grabbed by Defendants King and Davis and slammed face first against a police vehicle. He alleges that thereafter Defendants King and Davis kicked his legs out from under him, tackled him to the ground, and kneed him to his ribs and back. While in this position, Defendant King used his forearm to choke Plaintiff, even while Plaintiff told him he could not breathe. Eventually, after Plaintiff was placed in handcuffs and was lying on the ground, Defendant Kohler sprayed Plaintiff with OC spray in the face. *See* Compl. ¶¶ 8-14. As a result of these actions, Plaintiff alleges he suffered bodily injuries and medical expenses. *Id.* at ¶ 18. As alleged, these actions are not objectively reasonable and Plaintiff has sufficiently alleged a claim for excessive force.

Defendants argue, however, that Plaintiff has pled guilty to resisting arrest, and that Defendants' conduct was therefore *per se* reasonable. This argument fails.[3] Not only is this claim based on the false premise that Plaintiff pled guilty to resisting arrest (while he actually pled to disorderly conduct), it also fails to consider that a defendant police officer who is justified in using "substantial force" in making an arrest "does not mean that he was justified in using an excessive amount of force." *See Nelson*, 109 F.3d at 145. As alleged, Defendants' conduct gave rise to an unconstitutional seizure of Plaintiff when they approached him and "restrain[ed] his freedom to walk away." *See Terry v. Ohio*, 392 U.S. 1, 16 (1968). The facts alleged by Plaintiff regarding the amount of force used by Defendants were not objectively reasonable, and therefore Plaintiff has sufficiently alleged that the "officer's conduct violated [his] constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Second, the constitutional right to be free from the use of excessive force was clearly established at the time of Plaintiff's arrest. When considering this step, courts should look to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007) (internal quotation omitted). As stated above, the law regarding the amount of force that is considered reasonable during an arrest or other such seizure is well-established. Accepting the facts as alleged in the Complaint, as the Court must at this stage of the proceedings, the Court concludes that no reasonable office in the Defendant Officers' positions would have believed that that throwing Plaintiff into their police vehicle, kicking Plaintiff's legs out from him, tackling Plaintiff to the ground, kneeing

---

[3] Defendants argue that a review of the judicial proceedings where Plaintiff pled to disorderly conduct on February 2, 2012 should be considered to show that the Defendants were reasonable in their actions. *See* Defs' Reply Br. at 2-3 (citing Certification of Steven D. Farsiou ("Farsiou Cert.") Ex. B). A review of a transcript of a prior proceeding for factual purposes is inappropriate at this stage, and would convert the motion into one for summary judgment. *See Morozin v. Johnson*, No. 11-2653, 2011 U.S. Dist. LEXIS 133267, at *18-19 (E.D. Pa. Nov. 17, 2011) (citing *S. Cross Overseas Agencies, Inc.*, 181 F.3d at 426-27). The reasonableness of the Defendants' actions can only be viewed through the allegations contained in the Complaint.

Plaintiff in his ribs and back, and choking Plaintiff was a lawful, reasonable amount of force to use under the circumstances.   There are simply no allegations in the Complaint that show Plaintiff posed a threat to the Defendants or that demonstrate Plaintiff was resisting arrest or attempting to evade arrest.   Consequently, reasonable officers in this particular situation would have known that the use of such physical force as alleged here was impermissible.

Furthermore, in December of 2010 it was very clearly established that choking and pepper spraying an arrestee that was both not resisting and handcuffed constitutes a constitutional violation. *See, e.g.*, *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) ("[A]t the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued."); *Hurt v. City of Atlantic City*, No. 08-3053, 2010 U.S. Dist. LEXIS 16383, at *25-26 (D.N.J. Feb. 24, 2010) (finding that a reasonable officer in 2006 would know that beating a plaintiff whom no longer posed a risk to the officers was excessive and unconstitutional); *Peschko*, 2006 U.S. Dist. LEXIS 43871, at *20-21 (holding that a reasonable jury could find excessive force where plaintiff was punched and pepper-sprayed after he was handcuffed).   Because Plaintiff has sufficiently alleged that the actions of Defendants King, Davis, and Kohler violated a clearly established constitutional right, they are not entitled to qualified immunity at this time.   *See Doss v. Osty*, No. 10-3497, 2011 U.S. Dist. LEXIS 68824, at *11-12 (D.N.J. June 27, 2011) (denying motion to dismiss excessive force claim based on qualified immunity).

4.   *Judicial and Collateral Estoppel*

Defendants argue in the alternative that Plaintiff is collaterally and judicially estopped from claiming that Defendants King, Davis, and Kohler used excessive force by way of his plea colloquy in which he admitted he used excessive force.   Specifically, Defendants state that

Plaintiff "convince[ed] the municipal judge that the force he used in resisting arrest was greater than the force used in an attempt to effectuate his arrest, " and therefore "the issue of plaintiff's use of force was adjudicated and judicially determined." Defs.' Br. at 16. This Court disagrees. First, despite Defendants' insistence throughout their moving papers, Plaintiff clearly did <u>not</u> plea to resisting arrest. Plaintiff pled only to the municipal violation of disorderly conduct.[4] Next, while Defendants emphasize that the statements made by Plaintiff in his plea colloquy preempt his claims here, the Court cannot properly use the underlying facts of the plea colloquy at this stage of the proceedings.[5] *See Morozin*, 2011 U.S. Dist. LEXIS 133267, at *18-19 (citing *S. Cross Overseas Agencies, Inc.*, 181 F.3d at 426-27).

Defendants' argument regarding judicial and collateral estoppel barring Plaintiff's claim relies only upon their false assertions that Plaintiff pled guilty to resisting arrest and that "the issue of plaintiff's use of force was adjudicated and judicially determined." Defs' Br. at 16. They offer up no other argument regarding the properness of applying either judicial or collateral estoppal at this time. Without more, this Court will not dismiss Count One on either the grounds of judicial or collateral estoppel at this stage of the proceedings.

**b.**      **Plaintiff's Remaining Federal Law Claims (Counts Two through Five)**

In their moving papers, Defendants assert that the derivative federal law claims found in Counts Two through Five should be dismissed because Plaintiff's excessive force claim cannot survive a Rule 12(b)(6) challenge. Because this Court has found that Plaintiff's § 1983 violation for excessive force was sufficiently pleaded and not barred at this stage of the proceeding, the

---

[4] While it is clear from the charge disposition papers attached to the Defendants' moving papers that Plaintiff pled to Keansburg Municipal Ordinance 3:17.4, that statute relates only to the penalty for committing disorderly conduct. It is unclear exactly which violation of the ordinance Plaintiff committed, as the statute prohibits fifteen different types of conduct. It is therefore impossible for the Court to even consider if the elements of the municipal ordinance that Plaintiff pled guilty to violating would somehow lead to an issue of judicial or collateral estoppel here.

[5] It should be noted, however, that at no point during the plea colloquy did Plaintiff ever state that he either used force in resisting arrest or that the force he supposedly used "was greater than the force used in an attempt to effectuate his arrest." *See* Defs.' Br. at 16.

remaining § 1983 claims alleged by Plaintiff in Counts Two through Five may likewise proceed.

These claims—for failure to intervene (Count Two), for supervisory liability (Count Three), for

unlawful custom, practice, policy, or inadequate training (Count Four), and for injunctive relief

(Count Five)—were adequately pled by Plaintiff in his Complaint and will not be dismissed.

### c.      Dismissal of Defendant O'Hare

Defendants assert that Defendant Raymond O'Hare, the apparently now-former Chief of

Police for the Borough of Keansburg Police Department, should be dismissed entirely from the

Complaint.  In support of this argument, they cite to facts contained in a certification submitted

by Defendant O'Hare, in which he states that he had retired from his position as Chief of Police

as of July 1, 2010 and therefore he had no involvement with the allegations in the Complaint.

*See* Farsiou Cert. Ex. H at ¶¶ 1-3 (the "O'Hare Certification").  As discussed, these facts are not

contained in the Complaint or in a document that is "integral to or explicitly relied upon in the

complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)

(internal quotation omitted).  The O'Hare Certification likewise does not fall into the Third

Circuit's definition of a "public record."  *See S. Cross Overseas Agencies*, 181 F.3d at 426-27;

*Pension Benefit Guar. Corp.*, 998 F.2d at 1197.   The Court may not consider these facts at this

stage of the proceedings because it would require a consideration of matters outside of the

pleadings.  Therefore, Defendant O'Hare will not be dismissed from the case.[6]

### d.      Section 1983 Claims against Defendant O'Hare and Pigott in their Individual Capacities (Count Four)

Defendants assert that the claim for damages under § 1983 for unlawful policy, custom,

or practice brought against Defendants O'Hare and Pigott in his individual capacity must be

---

[6] While the Court cannot dismiss Defendant O'Hare from this case based upon a certification at this stage of the proceedings, Plaintiff has evidenced a willingness to voluntarily dismiss Defendant O'Hare if he was in fact not acting Chief of Police and had no supervisory position over the Defendant Officers.  The Court strongly encourages the parties to confer and come to an agreement in regard to this issue.

dismissed because the claim is based solely on a theory of *respondeat superior*. Defendants

explain that, while it appears clear that the suit is brought against them in their official capacities

from the face of the Complaint, Plaintiff has asserted that all named Defendants are being sued

"in their individual and official capacities." Compl. ¶ 6. In his Opposition, Plaintiff does not

address this issue of whether he intended Defendants O'Hare and Pigott to be sued in their

individual capacities. Because he has alleged as much in his Complaint, this Court will assume

that Count Four, asserting a claim under § 1983 for unlawful policy, custom, or practice, is

brought against Defendants O'Hare and Pigott in both their individual and official capacities.

"[I]t is well established that [an individual] must have had 'personal involvement in the

alleged wrongdoing' in order to be liable under § 1983 because individual liability 'cannot be

predicated solely on the operation of *respondeat superior*.'" *Walsifer v. Borough of Belmar*, 262

F. App'x 421, 425 (3d Cir. 2008) (quoting *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)).

Allegations of personal direction or of actual knowledge and acquiescence by a plaintiff can

show personal involvement by an individual defendant. These allegations, however, "must be

made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Here, the claim for unlawful policy, custom, or practice in violation of § 1983 brought by

Plaintiff against Defendants O'Hare and Pigott in their individual capacities must be dismissed

because Plaintiff did not allege any facts showing that either Defendant O'Hare or Defendant

Pigott personally directed the alleged violation by the Defendant Officers or had actual

knowledge of the alleged violation and acquiesced to them. *See Turner v. AG Pa.,* 505 F. App'x

95, 98 (3d Cir. 2012). In Count Four, Plaintiff has alleged, *inter alia*, that the Officer Defendants

"were acting under the direction and control" of Defendants O'Hare and Pigott and that

Defendants O'Hare and Pigott "directly or indirectly, under color of state law, approved or

ratified the unlawful…conduct of Defendants" King, Davis and Kohler. Compl. ¶¶ 32, 39. While these allegations show that Defendants O'Hare and Pigott acquiesced to the alleged conduct of the Defendant Officers, Plaintiff has failed to allege any specific facts that, if proven, would show that Defendants O'Hare and Pigott were personally involved. *See Walsifer*, 262 F. App'x at 426 (explaining that the plaintiff failed to show that the defendant police chief "*personally* participated, condoned, or even knew of [the defendant officer's] allegedly improper conduct" when he only alleged that the defendant police chief was the chief of police at the time and that he had played golf with the defendant officer). Therefore, Count Four of the Complaint will be dismissed against Defendant O'Hare and Pigott in their individual capacities.

**e.** **New Jersey Civil Rights Act Claim (Count Six)**

In Count Six of his Complaint, Plaintiff argues that the excessive force used by Defendants King, Davis, and Kohler violated the New Jersey Civil Rights Act ("NJCRA"), *N.J.S.A.* 10:6-2. The NJCRA "was modeled after § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution." *Martinez v. New Jersey*, No. 11- 2223, 2012 U.S. Dist. LEXIS 80298, at *18 (D.N.J. June 8, 2012) (citing *Celestine v. Foley*, No. 10-1775, 2010 U.S. Dist. LEXIS 132511, at *22-23 (D.N.J. Dec. 14, 2010)). Because the NJCRA is modeled after Section 1983, the analysis of the allegation brought under Count Six is the same analysis applied to Count One. As such, the same outcome for Count One applies here to Count Six. Because Plaintiff established a violation of § 1983 for excessive force, Plaintiff has likewise stated a claim under the NJCRA and his claim for excessive force under Count Six remains for Defendants King, Davis, and Kohler.

**f.     Plaintiff's Additional State Law Claims (Counts Seven through Nine)**

Defendants argue that the remaining state law claims must also be dismissed because they are predicated on the Defendant Officers' use of excessive force and/or because the named Defendant Officers are immune from suit.  Defendants argue that these claims are "without substantive merit" and are "also foreclosed based upon immunity from suit."  This Court disagrees.  As established above, Plaintiff has sufficiently asserted a claim for excessive force in violation of § 1983.  Furthermore, the Defendant Officers are not immune from suit at this stage of the proceedings, because Plaintiff has alleged facts that show a violation of his Fourth Amendment rights, and the constitutional right to be free from the use of excessive force was clearly established at the time of Plaintiff's arrest.  *See City of Wilkes-Barre*, 700 F.3d at 679 (citing *Saucier*, 533 U.S. at 121; *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).  Plaintiff has also sufficiently alleged each of the common law claims that he has asserted in his Complaint.

*1.  Assault and Battery Claims (Count Seven)*

A person is liable for battery in New Jersey if "he acts intending to cause a harmful or offensive contact . . . or an imminent apprehension of such contact and a harmful or offensive contact directly or indirectly results."  *Giovine v. Giovine*, 284 N.J. Super. 3, 34 (App. Div. 1995) (internal quotation and citation omitted).  "A person who acts with the same intent may be liable for assault even if no contact actually results if the victim is placed in 'imminent apprehension' of a harmful or offensive contact."  *Id.*  It is well established that "[w]hen effecting an arrest, a police officer may use such force as is reasonably necessary under the circumstances."  *Mantz v. Chain*, 239 F. Supp. 2d 486, 507 (D.N.J. 2002).

Here, this Court has already determined that Plaintiff has stated a claim for excessive force under § 1983 as against Defendant Officers King, Davis, and Kohler.  Therefore, as a

general matter, Plaintiff has also stated a viable common law claim of assault and battery as against the same Defendant Officers because both of these claims are predicated on the alleged use of excessive force by Defendants King, Davis, and Kohler on the night in question. *See id.* at 507 ("Where a police officer uses excessive force in effectuating an arrest, that officer may be liable for assault and battery.").

2. *Intentional Infliction of Emotional Distress (Count Eight)*

To establish a claim for intentional infliction of emotional distress, a plaintiff must establish (1) that the defendant acted intentionally or recklessly; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's actions were the proximate cause of the plaintiff's emotional distress; and (4) that the emotional distress suffered by the plaintiff is so severe that no reasonable person would be able to endure it. *Gattas v. City of Jersey City*, 2010 U.S. Dist. LEXIS 20590, at *20-21 (D.N.J. Mar. 5, 2010) (citing *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 365-66 (1988)). Here, Plaintiff has sufficiently alleged a claim for intentional infliction of emotional distress. Plaintiff has alleged that Defendants King, Davis, and Kohler acted intentionally, and that, as a result of their conduct, he suffered "severe emotional distress that no person should be expected to endure." Compl. ¶¶ 52-53. The excessive and unprovoked use of force by the Defendant Officers alleged by Plaintiff, including slamming Plaintiff into the side of a police car, kicking and tackling Plaintiff to the ground, choking Plaintiff, and spraying Plaintiff in the face with OC spray after he was handcuffed and subdued, leads to an inference of sufficiently outrageous conduct to sustain a claim for intentional infliction of emotional distress at this stage of the proceedings. *See Garey v. Borough of Quakertown*, No. 12-799, 2012 U.S. Dist. LEXIS 117059, at *15-16 (E.D. Pa. Aug. 20, 2012) (holding that the use of tasers by defendant police officers on the plaintiff after he was subdued to be sufficiently outrageous to

sustain a claim for intentional infliction of emotional distress at the motion to dismiss stage); *Zimmerman v. Schaeffer*, 654 F. Supp. 2d 226, 257 (M.D. Pa. 2009) (finding plaintiffs presented enough evidence that defendant's conduct was outrageous when he used excessive force and subjected plaintiffs to unconstitutional conditions of confinement).

### 3. Negligence Claim (Count Nine)

In order to establish a common law negligence claim, "plaintiff must show that (1) the defendant owed a duty of care to the plaintiff, (2) defendant breached that duty of care, (3) defendant's breach was the proximate cause of plaintiff's injury, and (4) defendant's breach caused actual damages to plaintiff." *Stroby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716, 721 (D.N.J. 2010) (citing *Weinberg v. Dinger*, 106 N.J. 469, 484, 524 A.2d 366 (1987)). Here, Plaintiff alleges that the Defendant Officers owed a duty to the Plaintiff to not expose him to an unreasonable risk of injury. Plaintiff alleges that, by using excessive force against him, Defendants King, Davis, and Kohler breached their duty to use reasonable care and to not expose Plaintiff to an unreasonable risk of injury when arresting Plaintiff, resulting in "significant and permanent physical and emotional injury, medical expenses, and pain and suffering" to Plaintiff. Compl. ¶¶ 56-57, 59. Plaintiff has therefore alleged a plausible claim for negligence, and Count Nine will not be dismissed at this stage of the proceedings.

## f. Dismissal of State Law Claims as to Defendants O'Hare and Pigott

Defendants allege that Plaintiff's state law claims are barred as to Defendants O'Hare and Pigott pursuant to the New Jersey Tort Claims Act, *N.J.S.A.* 59:8-8. This argument, however, is superfluous because the Complaint does not allege any state law causes of action against either Defendant O'Hare or Defendant Pigott. As there is no cause of action for this Court to even consider dismissing, Defendants' argument is meritless.

### g.    Punitive Damages

Finally, Defendants argue that there can be no claim against Keansburg Borough by Plaintiff for punitive damages under either Section 1983 and the NJCRA.  In his opposition, Plaintiff states only that he "does not take a position" as to this argument.  Pl.'s Opp. Br. at 8.

It is well-established that "a municipality is immune from punitive damages under 42 U.S.C. § 1983."  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Courts have consistently held that the NJCRA similarly does not allow for punitive damages against municipalities.  *See Cruz v. County of Bergen*, No. 10-3322, 2011 U.S. Dist. LEXIS 32927, at *8-9 (D.N.J. Mar. 29, 2011) (finding punitive damages to be unavailable against a county entity under the NJCRA); *Damiani v. W. Deptford Twp.*, No. 07-2884, 2008 U.S. Dist. LEXIS 17581 (D.N.J. Mar. 7, 2008) (dismissing claim for punitive damages brought against municipality under NJCRA as not authorized by statute).  Plaintiff, however, has not claimed punitive damages against Keansburg Borough under the NJCRA.  Therefore, Defendants' argument to dismiss punitive damages against Keansburg Borough is without merit.  Plaintiff has, however, made a demand for punitive damages against Keansburg Borough under Section 1983 in Count Four of his Complaint.  Therefore, because Keansburg Borough cannot be liable under Section 1983 for punitive damages as a matter of law, Plaintiff's claim for punitive damages in Count Four of his Complaint against Keansburg Borough will be dismissed.

### III.    Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss the Complaint is granted in part and denied in part.  An appropriate Order accompanies this Opinion.


/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.